Turley, J.
delivered the opinion of the court.
Ralph Shelton, the father and grandfather of the complainants and defendants, died in the summer of the year 1818. Previous to his death, viz: on the 2d day of August, 1815, he deeded to his son John a tract of land of three hundred iteres, on which he then lived in Knox county, for “full satisfaction” received from him. This deed was proved at the April session of the county court of Knox county, 1816, and registered on the 11th day of December, 1816. On the 9th day of January, 1815, he also-made a bill of sale to his said son, John, for four negroes, Sylvia, Charlotte, Jim and Patience, for the consideration of $700, which was proved at the April session, 1815, of the county court of Knox, and regis *384 tered August 18th, Í815. Ou the 20th October, 1817, John Shelton made a bill of sale of the same negroes to his brother, Richard Shelton, for the consideration of $1200, which was proved at the February session, 1818, of Grainger county court, and registered on the 4th of March, 1818. Richard took possession of the negroes immediately after the date of the bill of sale, and retained them until his death, and they yet remain in the hands of his widow and heirs. After the death of Ralph Shelton, in 1818, John Shelton continued to reside on the three hundred acre tract of land, conveyed to him as before stated, and also took possession of a tract of sixty acres adjoining, claiming it under a parol gift of his far ther.
No administration was ever granted on the estate of Ralph Shelton, deceased, until it was obtained by James Bledsoe, one of the complainants, with the view of avoiding difficulty in filing this bill, but notwithstanding this, Richard Shelton, after the death of his father, sold his father’s perishable property, amounting in value to $223, and made use of the money, and also took into his possession negroes, Ralph, Easter and Dave, the property of his deceased father, and kept them till his death, and they now remain in the possession of his wife and children.
This bill of complaint was filed on the 20th day of August, 1836, against John Shelton and the widow and heirs of Rich* ard Shelton, deceased, alleging that the deed and bill of sale executed by Ralph Shelton, deceased, to his son John, were void, because the said Ralph was non compos mentis at the time they were executed, and praying that the property may be divided according to law between the complainants and defendants, the heirs at law and distributees of Ralph Shelton, and for an account of the rents, issues and profits thereof.
The defendants seek to protect themselves against the relief asked, upon this ground. 1st. That distributees have not a right to file a hill for their distributive portions in their character as such, against any person but the personal representatives of the deceased; and that though in this case one of the complainants is the administrator of Ralph Shelton, yet he has filed his bill, not in the character of administrator, but, as *385 a distributee, and that if this be not so, the bill is multifarious, v , , . . . because parties have been ioined who claim in different and therefore the suit cannot be maintained.
2d. They deny that Ralph Shelton, at the date of the deed and bill of sale was insane.
3d. They rely upon the statute of limitations, claiming to have held adverse possession of the land for seven years, and of the negroes for three years, before the commencement of this suit.
The first ground of defence’embraces three separate propositions. 1st. Can distributees recover their distributive portions without an administration on the estate of their intestate? We are clearly of opinion that they cannot. Personal property was, by the common law, considered of so little value, that no provision was made for its descent to the heirs at law of the owner. Indeed, up to the 22d and 23d Charles II, the date of the passage of the statute of distributions, an administrator was entitled exclusively to enjoy the residue of the intestate’s effects, after the payment of the debts and funeral expences. 2d Williams on executors, 906. This being the case whoever can get possession of personal property upon the owner’s dying intestate, can hold it against any person save a creditor, or an administrator; to the first he is liable as an executor de son tort, to the second, because he is the representative of the deceased, upon whom the law casts his rights to the personal estate to be held by him for the payment of debts, and since the passage of the statute of distribution, for distribution among the next of- kin of the intestate. A distributee stands in neither of these relations, and therefore cannot sue for the personal property of the intestate, nor demand a distribution of it from any person save the administrator.
2d. Can this be considered as a bill filed by the administrators of Ralph Shelton, deceased, in conjunction with dis-tributees and other heirs to set aside the void conveyance to the land and negroes, to regain possession 'of his personal property, and to have a division and distribution thereof? We think it may; for though the administrator is one of the heirs and legatees of Ralph Shelton, and the bill is framed primari- *386 for a division and distribution of the estate, yet it express-charges that James Bledsoe has administered on the estate, the better to receive it, and to avoid any cavil that might be made by reason of there being no administrator. Then, the administrator is before the court as a complainant so described and declared to be, and that, for the purpose of enabling it to give him relief as such, if administration be necessary — and shall we say that the suit is not in his name, because he has pot filed his bill as specifically in that character as he would have done had he been suing at law? We think not. Chancery deals less in forms than law, and all that it asks upon questions of this character, is, that the pleadings shall show that the parties entitled to the relief sought are before the court.
3d, Is the bill multifarious ? We are inclined to think that it is, inasmuch as an administrator, heirs at law and distribu-tees, have been joined as complainants; but we do not consider it of any importance in the present case, whether it be or not, as it is a defect in equity pleading which can only be taken advantage of by demurrer, as was determined upon solemn argument by this court in the case of William Holt against Rice and others, not reported. There is then nothing jn the first ground of defence.
The second presents a question of fact as to the sanity or insanity of Ralph Shelton, at the date of the deed and bill of sale to his son John. There is a great mass of testimony taken on this point; it would be a useless labor to enter into an examination of it in a written opinion, and would swell it beyond bounds; let it suffice, that the insanity at the time is expressly charged in the bill and denied argumentatively and evasively in the answer, and that the whole weight of the proof, with the exception of two or three witnesses, the near relations of John Shelton by marriage, supports the fact of the insanity at and before the execution of the deed and bill of sale, to our minds satisfactorily and conclusively, and the more especially so when it is admitted that no consideration whatever passed from John Shelton to his father for either the land or negroes. Then the deed and bill of sale were *387 abinitio void, and passed no title from Ralph Shelton to John either in the land or negroes.
The third and last inquiry is, has the statute of limitation perfected the title of the defendants either to the land or ne-groes? Possession of the negroes and land Was taken by John Shelton and Richard Shelton, under the deed and bill of sale, during the lifetime of Ralph Shelton, and has beeii continued from that period up to the time of filing the bill. But the proof establishes the fact that Ralph Shelton was not only insane at the time of the execution of the deed and bill of sale, but so continued until his death. The statute of limitations did not commence running in his lifetime, he being within one of the savings of the statute. At his death his real estate descended to his heirs at law, and from that timé the statute commenced running, as to them, upon the possession of John Shelton of the three hundred acre tract con¿ veyed to him by his father in his lifetime, but not as to the sixty-one acres which he claimed by parol gift. Ralph Shel* ton died in 1818, and the bill was filed in 1836, of consequence more than seven years have elapsed since the right of action accrued to the heirs of Ralph Shelton, for the tract of land of three hundred acres held adversely by John Shelton, and the same is barred by the operation of the statute of limitations. When Ralph Shelton died, the law cast the right to his personal property on no one, till letters of administiation were granted on his estate, and of consequence there was no person who could sue for a wrongful conversion of it until that was done. As Ralph Shelton was deranged from the date of the bill of sale to his death, the statute of limitations as to his personal estate could not begin to run in favor of an adverse holder under the bill of sale, but from the date of the administration, because it could not run against him, he being within the savings of the statute, and when he died, there was no person against whom the property could be held adversely, as no one had any right thereto until he acquired it by becoming administrator of the estate. It is a well settled principle of law, that before the statute of limitations can operate as a bar to the recovery of property, there must not only have been an adverse holding for the time prescribed by the statute, but there *388 ^lave been some person in existence capable of suing for the recovery, and not within the savings of the statute. Let- „ , V. . , , , „ . . ters oí admimsti ation were obtained on the estate ot Ralph ghelton, by James Bledsoe, one of the complainants, within three years before the filing of this bill, and the statute of limitations is no bar to a recovery by him of the personal estate of his intestate in the hands of the defendants. Upon the whole of this case, the court think that the complainants are entitled to a division of the tract of land containing sixty acres, and an account of the rents and profits thereof from John Shelton. James Bledsoe, the administrator, is entitled to recover possession of all the negroes and their increase, which belonged to the estate of Ralph Shelton, deceased, at the time of his death, as well those specified in the bill of sale to his son John, as others in the hands of the defendants: but inasmuch as Richard Shelton is dead, and his administrator is not before the court, he is not entitled to have an account of the perishable property belonging to Ralph Shelton, which was sold by him, nor for hire of the negroes from the time he took them into possession till his death; and that inasmuch as the administrator has, by filing this bill with other distributees assented to a distribution of the estate by the court, the parties are entitled to have it without further unnecessary delay, A decree will be drawn in accordance with their views.
Decree accordingly.